**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **IN RE: BIOZORB DEVICE PRODUCTS LIABILITY LITIGATION**<br><br>*This Document Relates to: Plaintiff Kimberly Taylor in Case No. 1:23-cv-10260* | **Case No. 1:22-cv-11895-ADB** |

**DEFENDANT HOLOGIC, INC.'S MOTION IN *LIMINE* NO. 11**
**TO EXCLUDE EVIDENCE, ARGUMENT, OR TESTIMONY REGARDING**
**HOLOGIC'S FINANCES OTHER THAN NET WORTH**

Defendant Hologic, Inc. ("Hologic") moves *in limine* to exclude evidence, argument, or testimony regarding Hologic's financial condition other than net worth. The only conceivable rationale for admitting evidence or argument regarding Hologic's finances would be that it is relevant to Hologic's ability to pay a punitive damages award. This Court should not permit such evidence unless and until the jury has granted punitive damages and must assess the amount of an award. And even then, such evidence should be limited to Hologic's net worth at the time of trial.

## BACKGROUND

Hologic anticipates that Plaintiff will introduce evidence regarding the financial condition of Hologic and its Breast Health segment at trial. Plaintiff disclosed a report from her proffered expert Dr. Stan Smith that presents evidence of various irrelevant metrics regarding Hologic's financial condition, including Hologic's company-wide and Breast Health segment's total revenue, net income, and profit, as well as Hologic's stock price between 2011 and 2024. *See* Wiesner Decl. Ex. A (Punitive Damages Report) at 3–12. Plaintiff also disclosed a supplemental report from Dr. Smith that presents evidence of BioZorb's unit sales, sale price per unit, and cost of goods sold from 2019 to 2025. *See* Wiesner Decl. Ex. B (Supplemental Report) at 1–2. Hologic has separately

moved to exclude Dr. Smith's testimony regarding Hologic's ability to pay a punitive damages award. *See* ECF No. 290 (Hologic's Mem. of Law in Support of Mot. to Exclude Dr. Smith) at 14–15. For the additional reasons set forth below, this Court should limit evidence of financial metrics other than net worth from being presented at all, whether through expert or witness testimony or any other mechanism.[1]

## ARGUMENT

### I. Evidence of Hologic's Financial Condition Should Be Permitted Only if Plaintiff First Establishes That Punitive Damages Are Warranted.

Under New York law, "the wealth of a party is never admissible, directly or otherwise" except "in those exceptional cases, where . . . wealth is necessarily involved in determining the damages sustained." *Uzhca v. Wal-Mart Stores, Inc.*, No. 17 Civ. 3850, 2023 WL 2529186, at *6 (S.D.N.Y. Mar. 15, 2023) (quoting *Tesser v. Bd. of Educ. of City Sch. Dist. of City of New York*, 370 F.3d 314, 318 (2d Cir. 2004)). Courts therefore consistently preclude evidence of a corporate defendant's financial condition during trial on issues other than punitive damages. *See id.*; *Breest v. Haggis*, No. 161137/2017, 2022 N.Y. Misc. LEXIS 24987, at *10–11 (N.Y. Sup. Ct. Sept. 26, 2022).

Evidence of financial condition would lead to a significant risk of unfair prejudice to Hologic throughout trial. ***First***, the evidence may lead the jury "to believe the defendant has deep pockets," and thus is less impacted by a finding of liability. *Aleem v. Antonacci*, No. 607787-2019,

[1] Should the jury grant punitive damages, Hologic can provide a statement of net worth or stipulate to the amount, to be introduced if and when punitive damages become an issue. *See Wood v. Cap. One Servs., LLC*, No. 5:09–CV–1445, 2011 WL 2154279, at *11 (N.D.N.Y. Apr. 15, 2011) (finding "no need for additional discovery" into the defendant's finances where it stipulated to net worth); *In re New York City Asbestos Litig.*, No. 78200/2017, 2017 WL 11709343, at *15 (N.Y. Sup. Ct. June 20, 2017) ("[N]o later than immediately prior to the commencement of jury selection, defendant shall provide plaintiff with reliable financial disclosure. . . . To the maximum extent feasible, the parties shall stipulate to facts, and/or the admission of documents, on the question of a defendant's financial condition.").

2021 N.Y. Misc. LEXIS 58613, at *2–3 (N.Y. Sup. Ct. Apr. 14, 2021); *see also Uzhca*, 2023 WL 2529186, at *6 (recognizing defendants' "concern that jurors will be biased toward finding liability . . . due to [a defendant's] deep pocket").[2] Courts have recognized that "[a]ny probative value that evidence of the corporate Defendants' wealth, financial condition, and unrelated revenues may have during the liability phase of the trial is substantially outweighed by the danger of unfair prejudice that might result from jurors basing their conclusions on the relative wealth of the parties." *Loussier v. Universal Music Grp., Inc.*, No. 02 Civ. 2447, 2005 WL 5644421, at *2 (S.D.N.Y. July 14, 2005).

Similarly, courts have recognized that evidence of a defendant's profits from allegedly defective products would only be unduly prejudicial during presentation of the case-in-chief. The "profit margin or motive to maximize profits is irrelevant to . . . failure to warn claims" and "irrelevant for purposes of the risk-utility analysis." *Bunch v. Pac. Cycle, Inc.*, No. 4:13-CV-0036, 2015 WL 11622952, at *10 (N.D. Ga. Apr. 27, 2015) (collecting cases); *see also Ake v. GMC*, 942 F. Supp. 869, 875–76 (W.D.N.Y. 1996) (discussing "scant probative value" and undue prejudice of evidence regarding profits when jury "determining whether a product's design is defective"). To the extent Plaintiff will use evidence of gross margins to imply that Hologic had a profit motive, the "risk that the jury would be prejudiced by [the] reference to the enormous profitability" of the BioZorb is "inescapable." *La Plante v. Am. Honda Motor Co. Inc.*, 27 F.3d 731, 739–40 (1st Cir. 1994). Here, Dr. Smith undoubtedly plans to characterize the BioZorb as enormously profitable and Hologic as motivated by greed. *See* Wiesner Decl. Ex. B (Supplemental Report) at 2 (describing the "great gross margin percentage and . . . markup" of the BioZorb).

[2] This logic applies equally to any evidence or argument regarding the existence and/or amount of insurance coverage.

***Second***, the evidence may lead the jury to consider Hologic's ability to pay in assessing the amount of compensatory damages. Evidence of financial condition "has no place in assessing an award of compensatory damages." *Varriale v. Saratoga Harness Racing, Inc.*, 76 A.D.2d 991, 992, 429 N.Y.S.2d 302 (N.Y. App. Div. 1980) (reversing excessive jury verdict which was "in [the court's] view, the result of improper and prejudicial" references to the defendant's financial condition when the jury was assessing compensatory damages).

***Third***, the evidence may lead the jury to consider Hologic's finances and profits in deciding whether to even grant punitive damages. A defendant's "wealth should not be a weapon to be used by plaintiff to . . . induce the jury to find the defendant guilty of malice, thus *entitling* plaintiff to punitive damages." *Tillery v. Lynn*, 607 F. Supp. 399, 403 (S.D.N.Y. 1985) (emphasis added) (citation omitted). Exclusion of evidence regarding financial condition is a "significant safeguard[] . . . to protect defendants from any anticorporate prejudice," ensuring that the jury decides to "award punitive damages based upon defendants' conduct" rather than "to punish defendants on the sole basis of their wealth." *Rose v. Brown & Williamson Tobacco Corp.*, 809 N.Y.S.2d 784, 807–08 (N.Y. Sup. Ct. 2005). Accordingly, courts prefer to try the "availability" of punitive damages before trying "the amount of punitive damages so that financial information relevant to the latter issue does not unduly influence the former determination." *TVT Records v. Island Def Jam Music Grp.*, 257 F. Supp. 2d 737, 746–47 (S.D.N.Y. 2003); *see also Simpson v. Pittsburgh Corning Corp.*, 901 F.2d 277, 283 (2d Cir. 1990) (discussing this as the "preferred method").

In recognition of the irrelevance and risk of prejudice, courts therefore preclude evidence of a defendant's financial condition until the jury has returned a verdict "on the merits [of liability] and on whether or not punitive damages are warranted in this instance." *Tillery*, 607 F. Supp. at 403. Only then is the jury presented with evidence of the defendant's net worth. *Id.*; *see also Moye v. Mount Sinai Hosp.*, 216 A.D.3d 571, 572, 188 N.Y.S.3d 70 (N.Y. App. Div. 2023) (reversing

order directing defendant to provide a statement of net worth because "financial disclosures sought in support of a claim for punitive damages should await a special verdict on the question of liability"); *Suozzi v. Parente*, 161 A.D.2d 232, 232, 554 N.Y.S.2d 617 (N.Y. App. Div. 1990) (holding that the plaintiffs' request for "financial disclosure . . . solely in support of [a] claim for punitive damages" was "inappropriate at [the] pre-trial stage" and "should await the return of a special verdict on the question of liability"). Indeed, according to New York practice, "[e]vidence of defendant's wealth or financial condition is generally not [even] discoverable until after the trier of fact has determined the defendant's liability for punitive damages." N.Y.P.J.I. 2:278 cmt.

Consistent with that practice, this Court should preclude the introduction of evidence of Hologic's financial condition unless and until the jury first finds that Plaintiff is entitled to punitive damages. *See Tyco Int'l Ltd. v. Walsh*, No. 02 Civ. 4633, 2010 WL 3000179, at *1 (S.D.N.Y. July 30, 2010) ("Since it would often be prejudicial to a defendant to attempt to litigate its financial condition during the trial on the issues of liability and compensatory damages, the preferred method . . . is to delay trial as to the amount of an award of punitive damages" (quoting *Smith v. Lightning Bolt Prods., Inc.*, 861 F.2d 363, 373–74 (2d Cir. 1988)); *Goldenson v. Steffens*, No. 2:10-cv-00440, 2014 WL 3105033, at *2 (D. Me. July 7, 2014) ("[T]he Court will initially pose only the liability question on punitive damages to the jury. If the jury renders a verdict [granting punitive damages] the Court will allow the parties to proceed with further evidence . . . including the wealth of the Defendants.").

## II. If Punitive Damages Are Warranted, the Only Permissible Financial Metric is Hologic's Net Worth.

If Plaintiff demonstrates that she is entitled to punitive damages, this Court should limit the evidence of Hologic's finances to its net worth at the time of trial. Evidence Plaintiff intends to introduce such as Dr. Smith's purported testimony would extend far beyond that.

Under New York law, the "relevant financial information on the question of the amount of a punitive damage award is defendant's net worth." *Rose*, 809 N.Y.S.2d at 713. The purpose of admitting net worth is to ensure that "the size of a damages award is reasonable as punishment and effective as deterrent." *Thoreson v. Penthouse Int'l, Ltd.*, 563 N.Y.S.2d 968, 976 (N.Y. Sup. Ct. 1990). Accordingly, "there is no need for a plaintiff to explore the details of a defendant's assets and liabilities. A ***mere statement of defendant's respective total net worth*** is sufficient." *Rupert v. Sellers*, 48 A.D.2d 265, 272, 368 N.Y.S.2d 904, 913 (N.Y. App. Div. 1975) (emphasis added); *see also Hazeldine v. Beverage Media, Ltd.*, No. 94 Civ. 3466, 1997 WL 362229, at *4 (S.D.N.Y. June 27, 1997) (limiting financial discovery in recognition "that plaintiff is only entitled to a general statement of the defendants' net worth" and that she "needs no more to establish her punitive damages claim"); *Collens v. City of New York*, 222 F.R.D. 249, 254 (S.D.N.Y. 2004) (discussing "more efficient and less intrusive means for obtaining financial information" such as a sworn "affidavit declaring . . . net worth"); *Bryant v. Allied Account Servs. Inc.*, No. CV 05-5565, 2006 WL 2620376, at *2 (E.D.N.Y. Sept. 13, 2006) (likewise discussing sources such as testimony or an "affidavit declaring . . . net worth" to "provide a general picture of defendants' financial status which is all that is required").

Indeed, metrics other than net worth at the time of trial could only confuse the jury regarding Hologic's ability to pay, as Dr. Smith's report pointed to—for example—"significant fluctuations in net income" and "fluctuations in operating profit." Wiesner Decl. Ex. A (Punitive Damages Report) at 7, 10. And all other financial metrics such as revenue, profit, net income, gross margins, stock price, sales figures, and insurance coverage are not relevant to assess Hologic's ability to pay a judgment at the time of trial. *See, e.g.*, *Moore v. DAN Holdings, Inc.*, No. 1:12CV503, 2013 WL 1833557, at *16 (M.D.N.C. Apr. 30, 2013) (quoting *Happel v. Wal-Mart*

*Stores, Inc.*, No. 02 C 7771, 2007 WL 495277, at *3 (N.D. Ill. Feb. 9, 2007)) ("[n]et sales and income, even if current, is not relevant" to the assessment of punitive damages).

Moreover, the presentation of evidence other than net worth needlessly intrudes on Hologic's confidential financial information. Courts recognize that financial information—particularly beyond general total net worth—tends to implicate defendants' "concern for their privacy." *TVT Records*, 257 F. Supp. 2d at 747–48 (upholding restriction of evidence regarding defendants' finances to "statements of net worth"); *see also Hamm v. Potamkin*, No. 98 CIV. 7425, 1999 WL 249721, at *2 (S.D.N.Y. Apr. 28, 1999) (noting that "not all of the potentially sensitive information contained in defendants' tax returns is necessary or relevant"); *Suozzi*, 161 A.D.2d at 232, 554 N.Y.S.2d at 618 (noting intrusion on "the financial privacy of the defendants"). Plaintiff here intends to probe much deeper into Hologic's "private financial information" insofar as Dr. Smith's supplemental report relies entirely on Hologic's internal data on a product line's units sold, sale price per unit, and cost of goods sold. *Hazeldine*, 1997 WL 362229, at *4; Wiesner Decl. Ex. B (Supplemental Report) at 1.

Finally, information on the gross margin for BioZorb would be prejudicial and confusing. *See* Wiesner Decl. Ex. B (Supplemental Report) at 2 (opining that the [redacted]); Wiesner Decl. Ex. C (Smith Dep.) at 232:8–13. Dr. Smith's opinion on the "gross margin"/"gross profit" on sales of BioZorb is divorced from any evidence of Hologic's *actual* profit margin, as it does not take into account how much it actually cost Hologic to generate sales. Dr. Smith has admitted that his "gross profit" calculations do not factor in "costs such as research and development" or the cost of Hologic's purchase of BioZorb through its acquisition of Focal. Wiesner Decl. Ex. C (Smith Dep.) at 233:10–235:24, 236:8–237:1 *see also id.* at 237:5–7 ("It doesn't take into account 40 billion things. It takes into account costs associated with a sale.").

Thus, even if the gross profit on the BioZorb had "marginal probative value" to an assessment of punitive damages here (it does not), it "would be outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." *In re Norplant Contraceptive Prods. Liab. Litig.*, No. MDL 1038, 1997 WL 80526, at *1 (E.D. Tex. Feb. 19, 1997) (excluding reference to profit margin).

**CONCLUSION**

For the foregoing reasons, Hologic respectfully requests that the Court exclude evidence, testimony, or argument regarding Hologic's financial condition unless and until Plaintiff establishes that punitive damages are warranted against Hologic. At the juncture when the jury is assessing the amount of punitive damages (if ever), the evidence of Hologic's finances should be limited to its current net worth.

Respectfully submitted,

July 18, 2025

HOLOGIC, INC.,
By its attorneys,

*/s/ Daniel P. Tighe*
Daniel P. Tighe (BBO# 556583)
Pietro A. Conte (BBO# 707055)
DONNELLY, CONROY & GELHAAR, LLP
260 Franklin Street, Suite 1600
Boston, Massachusetts 02110
(617) 720-2880
dpt@dcglaw.com
pac@dcglaw.com

*/s/ Daniel S. Pariser*
ARNOLD & PORTER KAYE SCHOLER LLP
Daniel S. Pariser (admitted *pro hac vice*)
Jocelyn A. Wiesner (admitted *pro hac vice*)
601 Massachusetts Ave., NW
Washington, D.C. 20001
daniel.pariser@arnoldporter.com
jocelyn.wiesner@arnoldporter.com
T: +1 202.942.5000

*/s/ Daniel Meyers*
ARNOLD & PORTER KAYE SCHOLER LLP
Daniel Meyers (admitted *pro hac vice*)
70 West Madison Street, Suite 4200
Chicago, Illinois 60602-4321
daniel.meyers@arnoldporter.com
T: +1 312.583.2393

*/s/ Kaitlyn Schaeffer*
Lori B. Leskin (admitted *pro hac vice*)
Aaron Levine (admitted *pro hac vice*)
Kaitlyn Schaeffer (admitted *pro hac vice*)
250 West 55th Street
New York, New York 10019
lori.leskin@arnoldporter.com
aaron.levine@arnoldporter.com
kaitlyn.schaeffer@arnoldporter.com
T: +1.212.836.8000

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the NEF (NEF) and paper copies will be sent to those indicated as non-registered participants on July 18, 2025.

*/s/ Daniel P. Tighe*
Daniel P. Tighe